IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PELOTON INTERACTIVE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 20-662-RGA |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| ICON HEALTH & FITNESS, INC. | ) **Redacted - Public Version** |
| | ) |
| Defendant. | ) |

# DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

OF COUNSEL:

David R. Wright
MASCHOFF BRENNAN GILMORE
 ISRAELSEN & WRIGHT PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
(801) 297-1850

Tyson K. Hottinger
MASCHOFF BRENNAN GILMORE
 ISRAELSEN & WRIGHT PLLC
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
(949) 202-1900

Dated: September 25, 2020

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...................................................................................................................1

    A. ICON has stated claims for patent infringement (Count I and II), ▇
       ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇......................1

        1. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.....................2

        2. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.....................7

    B. ICON has stated claims for false advertising. ..............................................8

        1. Pleading standard ..............................................................................8

        2. ICON alleges that Peloton's statements concerning its music are misleading. ..........................................................................9

        3. Peloton's statements concerning "innovation" do not constitute puffery, and ICON has alleged that such statements misled consumers. ..............................................................11

        4. Peloton's statements concerning "competition" do not constitute puffery, and ICON has alleged that such statements misled consumers. ..............................................................12

III. CONCLUSION ..............................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)...........................................................................................................8, 10

*Castrol Inc. v. Pennzoil Co.*,
 987 F.2d 939 (3d Cir. 1993)....................................................................................................11

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮..................................................................................................7

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮..........................................................................................................7

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮..........................................................................................................7

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
 2014 WL 1316039 (W.D. Pa. April 1, 2014).............................................................................8

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
 163 F.3d 102 (2d Cir. 1998)..............................................................................................11, 13

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
 608 F. Supp. 1549 (E.D. Pa.1985) ............................................................................................8

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮..............................................................................................7

▮▮▮▮▮▮▮▮▮▮▮▮▮▮..................................................................................................................5

*Trans USA Prods., Inc. v. Howard Berger Co.*,
 2008 WL 852324 (D.N.J. Mar. 28, 2008)................................................................................10

*U.S. Bank Nat. Ass'n v. PHL Variable Ins.*,
 2013 WL 791462 (S.D.N.Y. Mar. 5, 2013).................................................................11, 12, 13

*Warner-Lambert Co. v. Breathasure, Inc.*,
 204 F.3d 87 (3d. Cir 2000)........................................................................................................9

## I. INTRODUCTION

ICON was the first to develop technology that allows in-home, live, and on-demand instructor-led classes with competition and leaderboards. Indeed, ICON developed this technology at least 12 years before Peloton was even founded. It is unsurprising then that Peloton's CEO, before founding the company, visited ICON's headquarters seeking access to ICON's technology ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████ (2) fill the airwaves with false advertising about, for instance, being an innovator in the industry and being the first to bring iFit-like technology to the market. ICON alleged all these facts in detail in its counterclaims, allegations that are adequate to state a claim for each of ICON's counts. This Court should therefore dismiss Peloton Interactive, Inc's Partial Motion to Dismiss ("Motion") (D.I. 39).

## II. ARGUMENT

**A.** ███████████████████████████████████

ICON alleges that Peloton infringes United States Patent Nos. 6,601,016 ("'016 Patent") and 7,556,590 ("'590 Patent") by using iFit technology in its Peloton Tread, ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

1

Case 1:20-cv-00662-RGA   Document 48   Filed 10/06/20   Page 5 of 18 PageID #: 1014



1.

Feldman Decl, Ex. 1, ▮▮▮ (D.I. 41) (emphasis added).

2

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

   █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

   ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████





This Court should therefore deny Peloton's partial motion to dismiss Count I and II of ICON's counterclaims.

**2.** ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████ Peloton has not met this standard. ███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

███████████

████████████ and the Court should deny Peloton's partial motion to dismiss Count I and II of ICON's counterclaims.

### B. ICON has stated claims for false advertising.

#### 1. Pleading standard

Peloton argues that false advertising claims under the Lanham Act are subject to a heightened "intermediate" pleading standard. This is incorrect. This error arises from a district court case decided thirty-five years ago when one court determined that a plaintiff was required to "provide[] sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow [the defendants] to make a proper defense." *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F. Supp. 1549, 1556 (E.D. Pa.1985). Some later courts adopted this "intermediate" standard, but others have noted that "the Third Circuit has not yet adopted this heightened pleading standard, and district courts disagree over the applicable standard." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 2014 WL 1316039, at *4 (W.D. Pa. April 1, 2014). And District courts disagree for a good reason: "the standard set forth in *Max Daetwyler* was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* as well as the Third Circuit's decision in *Fowler." Id.* Moreover, the "intermediate" standard articulated in *Max Daetwyler* appears noticeably similar to the standard set out in *Twombly* and *Iqbal*, where the Supreme Court heightened the pleading standard for all claims. In other words, the *Max Daetwyler* standard is simply an earlier articulation of the later *Iqbal*/*Twombly* standard.

So ICON's false advertising claims (Counts III and IV)[1] survive a motion to dismiss if the counterclaims allege that, *inter alia*, Peloton (1) "has made false or misleading statements as

---

[1] Peloton apparently does not challenge ICON's false advertising cause of action regarding Peloton's subscription service, as Peloton makes no arguments about the sufficiency of those allegations and seeks to dismiss only "Counts III and IV as they relate to Peloton's alleged 'statements concerning competition,' 'innovation,' and 'music offerings.'" Motion at 1.

8

to [its] own product." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91–92 (3d. Cir 2000). ICON does not need to meet some amorphous "intermediate" standard not recognized in the District of Delaware, the Third Circuit, or the Supreme Court. However, under any standard ICON adequately alleges that Peloton's advertising is, at a minimum, misleading and deceptive.

>   **2. ICON alleges that Peloton's statements concerning its music are misleading.**

ICON provides a number of allegations regarding false or misleading statements Peloton made about its music (under the heading "Peloton's False and Misleading Statements Concerning its Music Offerings"). Amended Counterclaims at ¶¶ 44–57. For instance, the counterclaims note that Peloton "recognized the importance of music to the success of its platform" and Peloton stated that music is "central to the Peloton experience and . . . one of the top aspects of the brand." *Id.* at 46. It is not surprising then that Peloton routinely "advertised the playlists for its classes," and ICON provided numerous examples of specific classes and artists that Peloton promoted, despite not having the rights to the music. *Id.* at ¶ 48. More importantly, ICON alleges that Peloton "knew it could not maintain" the music it was offering "in the future," *id.* at 51, but decided to advertise the music offerings in such a way that customers thought the current music offerings (or substantially similar playlists and classes) would continue indefinitely.

ICON further alleges that Peloton knew it lacked the proper licenses for much of its music offerings and therefore undoubtedly knew that access to "its 'hottest' classes" and hottest artists would end. *Id.* at 50. So, when artists began accusing Peloton of copyright infringement, Peloton "significantly reduce[d] its music offerings . . . in a classic bait-and-switch," *id.* at 55. Thus, Peloton's defense that "ICON does not allege, for example, that Peloton failed to conduct the Jennifer Lopez Artist Series classes on October 15, 2019" misses the point. Motion at 17.

ICON does allege that Peloton advertised its classes in such a way that deceived customers into thinking these types of classes would continue *beyond* "October 15, 2019." In other words, the counterclaims set out specific allegations accusing Peloton of deceiving customers with its advertising regarding music offerings—leading customers to believe access to well-known music was a <u>long-term</u> feature of their Peloton subscription service, thereby inducing consumers, based on false pretenses, to enter into lengthy subscription agreements. In this way Peloton intentionally misled customers into purchasing an expensive piece of exercise equipment (which works only with a Peloton subscription) by implying that music would be "central to the Peloton experience," with no ability to actually make that happen long term. These false claims also harmed ICON because every consumer who signed up for a subscription to Peloton's platform—based on false representations concerning its music offerings—represents a lost subscriber to ICON's iFit platform.

Also, these conclusions do not amount to "piling inference on inference," as Peloton suggests. Motion at 19. There are only two inferences needed: (1) that consumers buy Peloton exercise equipment in large part because of the company's music offerings, an "inference" that Peloton acknowledges, and (2) Peloton customers would be locked in to a subscription contract after paying thousands of dollars for a Peloton Bike or Tread even when—in the words of one customer—Peloton's music "consists of TONS of '80s music (and not even good '80s music for the most part[)]." Amended Counterclaims at ¶ 53. These are permissible "inferences" and more than sufficient allegations to "give [Peloton] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original); *see also Trans USA Prods., Inc. v. Howard Berger Co.*, 2008 WL 852324, at *5 (D.N.J. Mar. 28, 2008) (ICON needs only to provide "sufficiently detailed allegations regarding

10

the nature of the alleged falsehood to allow [Peloton] to make a proper defense"). This Court should therefore dismiss Peloton's Motion as it relates to ICON's allegations of misleading statements regarding Peloton's music offerings.

### 3. Peloton's statements concerning "innovation" do not constitute puffery, and ICON has alleged that such statements misled consumers.

Peloton has made many public statements about "being an innovator and 'building something that's the first of its kind.'" Amended Counterclaims at ¶ 31. ICON has alleged that these statements are false or at least misleading, as "[t]he reality is, Peloton did not innovate anything," *id.* at ¶ 32, and ICON was the first to invent the very technology that Peloton uses, *id.* at ¶ 17. It is therefore interesting to note that Peloton does not contend that its statements about innovation are true, only that they constitute puffery, which are mere "exaggeration[s] or overstatement[s] expressed in broad, vague, and commendatory language" that must be "understood as an expression of the seller's opinion only." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).

But even opinions and other statements that might be puffery in *some* contexts are actionable in other circumstances. For instance, "qualitative statements can be misrepresentations of existing facts if those statements are belied by conditions known to the defendants." *U.S. Bank Nat. Ass'n v. PHL Variable Ins.*, 2013 WL 791462, at *6 (S.D.N.Y. Mar. 5, 2013). In other words, even opinions and qualitative statements must have "a basis in fact." *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998). As even the case law Peloton cites requires that puffery and opinion be an "exaggeration or overstatement." *Castrol Inc.*, 987 F.2d at 945. One cannot *exaggerate* or *over*state a fact that has no basis in fact. And ICON has alleged that there is no basis in fact for the statements that Peloton is an innovator or has created "something that's the first of its kind." Amended Counterclaims at ¶ 58; *see also id.* at ¶ 60

11

("Peloton's statements [regarding innovation] therefore have no basis in fact. "). Moreover, ICON alleges that the statements "are belied by conditions known to" Peloton, *U.S. Bank*, 2013 WL 791462, at *6, as Peloton's CEO traveled to ICON's headquarters "seeking access to ICON's technology" and that Peloton actually licensed iFit technology for its Peloton Bike from ICON, Amended Counterclaims at ¶ 18–19.

ICON also alleges that these statements misled customers. ICON repeatedly refers to Peloton's "public statements," Amended Counterclaims at ¶¶ 58–62, that were "designed to deceive consumers and investors about . . . its so-called innovation in being first to market," *id.* at ¶ 20. Indeed, consistent with Peloton's deceptive purposes, these pervasive false statements seem to have resonated with consumers, as "Peloton had the media's attention." *Id.* Here is an example from Reddit:



ICON has therefore adequately pleaded false advertising claims regarding Peloton's false statements about innovation.

### 4. Peloton's statements concerning "competition" do not constitute puffery, and ICON has alleged that such statements misled consumers.

First, like Peloton's statements regarding its innovations, Peloton has "engaged in a pattern of false and misleading statements . . . that it lacks any competitors." Amended Counterclaims at ¶ 65. And like its statements regarding innovation, Peloton's statements—even if qualitative or opinion, which ICON does not concede—are actionable. This is because, for

instance, John Foley's interview statement regarding the Peloton bike—"Nobody else provides them, so we're kind of in a category of one"—is "belied by conditions known to" Peloton, *U.S. Bank*, 2013 WL 791462, at *6, and has no "basis in fact," *Int'l Bus. Machines Corp.*, 163 F.3d at 109. *See* Amended Counterclaims at ¶ 65 ("These statements [regarding competitors] have no basis in fact."). Indeed, ICON notes that "Peloton refers to ICON as a direct competitor in this lawsuit," and ICON alleges that "at the time Peloton was taking th[e] statements" about competitors, "it knew otherwise." Amended Counterclaims at ¶¶ 67, 69.

Second, ICON alleges that Peloton's public statements "misled consumers that there are no alternatives to the Peloton bike." Amended Counterclaims at ¶ 66. ICON also explains how Peloton was able to deceive the public about its untrue statements regarding competition: "Peloton had the media's attention," *id.* at ¶ 20, so Mr. Foley gave interviews where he stated untruthfully that "we're kind of in a category of one" and that "Peloton bought a manufacturer to 'get a cost advantage over any future competitors that we don't have yet,'" *id.* at ¶ 65.[2] The media repeated those claims, and Peloton "t[ook] advantage of the media coverage to mislead consumers" about its lack of competitors. ICON has therefore adequately pleaded its false advertising claim regarding competitors.

## III.   CONCLUSION

For the foregoing reasons, ICON respectfully requests that this Court deny Peloton's partial motion to dismiss ICON's counterclaims, as ICON has sufficiently pleaded each of its causes of action.

---

[2] Peloton also implies that ICON must show that Peloton was able to deceive "sophisticated consumers." Motion at 16. But there are no allegations in ICON's Amended Complaint regarding whether Peloton's customers are or are not sophisticated consumers.

|  |  |
|---|---|
| OF COUNSEL: | */s/ Frederick L. Cottrell, III*<br>Frederick L. Cottrell, III (#2555)<br>Christine D. Haynes (#4697) |
| David R. Wright<br>MASCHOFF BRENNAN GILMORE<br> ISRAELSEN & WRIGHT PLLC<br>111 South Main Street, Suite 600<br>Salt Lake City, Utah 84111<br>(801) 297-1850 | Richards, Layton & Finger, P.A.<br>920 N. King Street<br>Wilmington, DE  19801<br>(302) 651-7700<br>cottrell@rlf.com<br>haynes@rlf.com |
| Tyson K. Hottinger<br>MASCHOFF BRENNAN GILMORE<br> ISRAELSEN & WRIGHT PLLC<br>100 Spectrum Center Drive, Suite 1200<br>Irvine, California 92618<br>(949) 202-1900 | *Attorneys for Defendant* |

Dated:  September 25, 2020

14

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, true and correct copies of the foregoing document were served, via e-mail, on the following:

| | |
|---|---|
| Michael J. Flynn<br>Andrew M. Moshos<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market Street<br>P. O. Box 1347<br>Wilmington, DE  19801 | Steven N. Feldman<br>Douglas J. Dixon<br>Christina V. Rayburn<br>Karen Younkins<br>Haoxiaohan Cai<br>HUESTON HENNIGAN LLP<br>523 West Sixth Street, Suite 400<br>Los Angeles, CA 90014 |

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com