IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PELOTON INTERACTIVE, INC.,

　　　　Plaintiff,

　　v.

ICON HEATH & FITNESS, INC.,

　　　　Defendant.

Civil Action No. 20-662-RGA

MEMORANDUM OPINION

Michael J. Flynn, Andrew M. Moshos, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE; Steven N. Feldman, Douglas J. Dixon, Christina V. Rayburn, Karen Younkins, Haoxiaohan Cai, Joseph W. Crusham, HUESTON HENNIGAN LLP, Los Angeles, CA, Attorneys for Plaintiff.

Frederick L. Cottrell, III, Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; David R. Wright, MASCHOFF BRENNAN GILMORE ISRAELSEN & WRIGHT PLLC, Salt Lake City, UT; Tyson K. Hottinger, MASCHOFF BRENNAN GILMORE ISRAELSEN & WRIGHT PLLC, Irvine, CA, Attorneys for Defendant.

May 28, 2021

/s/ Richard G. Andrews
ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is Peloton's Partial Motion to Dismiss ICON's First Amended Counterclaims. (D.I. 39). The motion has been fully briefed. (D.I. 40, 46, 47). For the reasons set forth below, Peloton's motion is GRANTED in part and DENIED in part.

I. BACKGROUND

Peloton and ICON compete in the at-home fitness market and offer products that allow consumers to attend live and on-demand fitness classes from home. (D.I. 1 at ¶ 4; D.I. 27 at ¶ 9). The parties vigorously dispute their rights to the technology underlying the availability of live, at-home fitness classes and have three actions pending before this Court.

Peloton instituted the current action alleging that ICON infringed U.S. Patent Nos. 10,486,026 and 10,639,521, and violated the Delaware Deceptive Trade Practices Act (DTPA), the Lanham Act, and California's Unfair Competition Law. (*See* D.I. 1 at ¶¶ 117-160). ICON counterclaimed for infringement of its own patents, U.S. Patent Nos. 6,601,016 ('016 Patent) and 7,556,590 ('590 Patent), violations of the Lanham Act and the DTPA, and declarations of noninfringement and invalidity of Peloton's patents. (D.I. 27 at ¶¶ 95-178).

In the instant motion, Peloton moves to dismiss ICON's infringement counterclaims and a subset of its Lanham Act and DTPA allegations. (*See* D.I. 39). In its briefing, Peloton argues that it has an express license to practice the '016 and '590 Patents (the "iFit License") from a 2017 settlement with ICON. (D.I. 40 at 1). Peloton also challenges ICON's Lanham Act and DTPA claims concerning its music-based advertisements and statements focused on "innovation" and "competition." (*Id*. at 1-2).

## II. LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief…." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id*. at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id*. Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III. DISCUSSION

### A. The Court May Consider the 2017 Settlement Agreement

Under Rule 12(b)(6), "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotations and emphasis omitted). As the Third Circuit explained, "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

In evaluating its motion to dismiss, Peloton argues that the Court may consider the 2017 Settlement Agreement (D.I. 41-1, Ex. 1). (D.I. 40 at 4). Peloton contends that ICON's counterclaims are premised on the contents of the Settlement Agreement (containing the disputed iFit License), which permits the Court to consider the document. (*Id.*). ICON's answering brief addresses only the merits of Peloton's arguments and does not challenge the validity of the Settlement Agreement as attached or its consideration at the Rule 12(b)(6) stage. (*See, e.g.*, D.I. 46 at 2).

ICON's counterclaims reference the iFit License several times. For example, the counterclaims state, "ICON licensed Peloton to practice a limited scope of the '016 Patent for only its Peloton Bike. Peloton does not have any license to the '016 Patent for its Tread, nor does Peloton have any right or authority to license others to practice the '016 Patent for its Peloton Bike or its Tread." (D.I. 27 at ¶ 73). ICON's counterclaims repeatedly characterize Peloton's

license as having a "limited scope" (*id*. at ¶¶ 8, 19, 62, 73, 74) and reference the iFit License in both its infringement and false advertising allegations. (*See id*. at ¶¶ 62, 73-74).

I agree with Peloton that the language in ICON's counterclaims is sufficient to indicate that it relied on the Settlement Agreement in framing its claims. The fact that ICON did not attach the Settlement Agreement to its claims does not preclude the Court from considering it in connection with the instant Rule 12(b)(6) motion. *See In re Horsehead Holding Corp. Sec. Litig.*, 2018 WL 4838234, at *9 (D. Del. Oct. 4, 2018).

**B. A Choice of Law Analysis is Not Required**

In a footnote, Peloton explains that the Settlement Agreement lacks a choice of law provision. Peloton states, "New York law likely applies" based on Peloton's principal place of business and the fact that the settlement resolved litigation occurring in New York. (D.I. 40 at 5 n.1). Peloton's brief cites both Delaware and New York law for principles of contract interpretation. The principles do not appear to conflict. ICON's briefing does not address the choice of law issue, but also cites to both Delaware and New York caselaw.

When exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367, a federal court must apply the choice-of-law rules of the forum state in which it sits. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008); *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Thus, Delaware's choice-of-law rules govern the Court's analysis.

Delaware's choice-of-law rules require a two-pronged approach. *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 358 (3d Cir. 2007)). First, the court must identify whether an actual conflict exists through "an examination of the competing laws proposed by the parties." *Id*. at 467. If the end result under the competing laws is the same, the choice presents a

"false conflict" and the court should avoid conducting a conflicts analysis. *Id*. at 466-67. Second, if a conflict exists, Delaware applies the "most significant relationship" test per the Restatement (Second) of Conflict of Laws. *Id.* at 467.

Delaware and New York apply very similar rules of contractual interpretation. In New York,

> A written agreement that is clear and complete on its face must be enforced according to the plain meaning of its terms. Extrinsic evidence may be considered to discern the parties' intent only if the contract is ambiguous, which is a question of law for the court to resolve. In determining whether an ambiguity exists, '"[t]he court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby."'

*Warner v. Bd. of Educ.*, 968 N.Y.S.2d 714, 716 (N.Y. App. Div. 2013) (internal citations omitted). And, in Delaware,

> Delaware law adheres to the objective theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party. When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions. Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract.

*Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) (internal citations and quotations omitted). As I believe the result would be the same under either set of laws, I decline to conduct a choice of law analysis.

### C. ICON's Patent Infringement Claims

Peloton asserts that the plain language of the iFit License contained in the parties' 2017 Settlement Agreement contradicts ICON's infringement allegations. (D.I. 40 at 5). The disputed language is:

> ICON grants Peloton, its parents, subsidiaries, affiliates, manufacturers, distributers and customers a non-exclusive, fully paid-up, lump sum, royalty free, worldwide license to 'iFit Functionality,' including the right to import, export, make, have made, use, lease, sell, offer to sell, or otherwise dispose of the existing Peloton Bike and substantially similar products/technologies. This license only applies to Peloton products being manufactured, distributed, and sold as Peloton products and does not include any ability to sub-license the 'iFit Functionality' to any person or entity at any time. Any such sub-license is specifically excluded from Peloton's rights. 'iFit Functionality' shall mean the functionality and features currently embodied in the Peloton Bike as of May 22, 2017, the Asserted Patents, and nothing else.

(D.I. 41-1, Ex. 1 at 2-3). The "Asserted Patents" include the '590 and '016 Patents. (*Id*. at 1). Peloton argues that there is no language in the iFit License that limits the license to the Peloton Bike. (D.I. 40 at 7). Rather, Peloton contends that, when the parties wanted to limit the license to the Bike, the agreement uses the term "Current Product," which is limited to "any Party's product verifiably available for public purchase on or before May 22, 2017." (D.I. 41-1, Ex. 1 at 3).

ICON argues that the iFit License is limited to the Peloton Bike. (D.I. 46 at 1-2). In particular, ICON asserts that the definition of "iFit Functionality" includes "only the features and functionality found in *both* the Asserted Patents and the Peloton Bike as of May 22, 2017, and nothing else." (*Id*. at 2) (emphasis in original). ICON also points to the language limiting the license to "Peloton products being manufactured, distributed, and sold as Peloton products" as confirmation that the agreement does not apply to the Peloton Tread, which was not in production at the time. (*Id*. at 3).

7

Both parties argue that the presumption against surplusage supports their position.[1] Peloton contends that reading the iFit License to include only the Peloton Bike would read out the language that permits Peloton "to import, export . . . or otherwise dispose of the existing Peloton Bike *and substantially similar products/technologies*." (D.I. 40 at 9 (emphasis in original); *see also* D.I. 41-1, Ex. 1 at 2-3). ICON argues that not restricting the iFit License to the Peloton Bike would render the language "embodied in the Peloton Bike as of May 22, 2017" superfluous. (D.I. 46 at 3). If the parties intended to grant Peloton a full license to the Asserted Patents, ICON argues, the definition of "iFit Functionality" would simply end with the Asserted Patents. (*Id.*).

The parties also debate whether the term "including" should be a term of limitation or whether it introduces an illustrative list. (D.I. 40 at 10-11; D.I. 46 at 4-6). Peloton contends that the term introduces an illustrative list, which indicates that the iFit License is not limited to the Peloton Bike and substantially similar products. (D.I. 40 at 10-11). ICON replies that reading "including" in accordance with Peloton's argument would contradict the plain, unambiguous limitation in the text. (D.I. 46 at 5-6). ICON also attempts to draw a distinction between illustrative lists and non-exhaustive lists in arguing that the list introduced by "including" may be illustrative but is not open-ended. (*Id.* at 4).

While I agree with Peloton that several of these disputes are amenable to resolution on their plain language, I find that the language "substantially similar products/technology" leaves room for ambiguity. It is clear that the license has limits; it is something less than a license to

---

[1] Courts in both New York and Delaware avoid interpreting contract provisions in a manner that creates surplusage. *See In re Shorenstein Hays-Nederlander Theaters LLC Appeals*, 213 A.3d 39, 56 (Del. 2019); *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 177 (N.Y. App. Div. 1995).

the two patents. But is this something more than just a license for the Peloton Bike? It is not an unreasonable reading of the iFit License's "including" clause to understand that it applies only to the Peloton Bike and substantially similar products. *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011) ("Ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation."); *Eagle Indus. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("When the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity."). And, if so, what constitutes a substantially similar product? Is the Peloton Tread (which is a treadmill, *see* D.I. 1 at 2) a substantially similar product? Probably not, but the Settlement Agreement does not resolve the question.

The interpretation of ambiguous contract language may be resolved by extrinsic evidence.[2] *See Eagle*, 702 A.2d at 1232; *Matter of Consol. Mut. Ins. Co.*, 566 N.E.2d 144, 150 (N.Y. 1990). At the Rule 12(b)(6) stage, however, the Court may not consider extrinsic evidence that is not included or relied upon in the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. And, as ICON notes in its briefing, I must resolve all ambiguities in its favor on a motion to dismiss. *See In re Energy Future Holdings Corp.*, 585 B.R. 341, 347-48 (D. Del. 2018), *aff'd*, 773 F. App'x 89 (3d Cir. 2019); *Vanderbilt Income & Growth Assocs., L.C.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996). Thus, it would be premature (at least) to grant Peloton's motion to dismiss ICON's infringement allegations based on the language of the iFit License.

---

[2] ICON appears to reference extrinsic evidence in making several arguments that appear to be based on its recollection of the contract negotiation process. (*See, e.g.*, D.I. 46 at 4) (arguing that "substantially similar" was only intended to encompass minor, unforeseen changes to the Peloton Bike).

Peloton's motion to dismiss ICON's infringement counterclaims (Counts I and II) is DENIED.

**D. ICON's Lanham Act and Delaware Deceptive Trade Practices Act Claims**

ICON alleges that Peloton made false and misleading statements in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the DTPA, 6 Del. C. § 2532. (D.I. 27 at ¶¶ 134, 143).

As an initial matter, the parties dispute the applicable pleading standard for ICON's Lanham Act claims. (D.I. 40 at 13; D.I. 46 at 8-9). Peloton urges the Court to apply an "intermediate" standard that first appeared in *Max Daetwyler Corp. v. Input Graphics Inc*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985). The Court held, "In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense." *Id*. ICON argues that the standard articulated in *Max Daetwyler* is inappropriate because it was decided before *Twombly* and *Iqbal*. (D.I. 46 at 8). Additionally, there is disagreement within district courts in the Third Circuit as to its applicability. *See, e.g.*, *U.S. ex. rel. Knisely v. Cintas Corp., Inc.*, 298 F.R.D. 229, 239 (E.D. Pa. 2014) (holding "that a Lanham Act allegation requires only that a plaintiff plead sufficient facts to support his allegation, and nothing more") (internal citations omitted); *but see Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009) (citing *Max Daetwyler*).

I do not think that applying a pre-*Twombly/Iqbal* heightened pleading standard is appropriate. As explained in *Shure Inc. v. Clearone, Inc.*, "Federal pleading requirements are set out in the Federal Rules of Civil Procedure (as those rules are interpreted by the Supreme Court of the United States); they are not created or crafted by federal district courts. And nowhere in Rules 8 or 9 (or elsewhere in the Federal Rules) does the Court see reference to such an

'intermediate' pleading standard. Nor has the Supreme Court or the Third Circuit ever concluded that such a standard should apply to [a Lanham Act] claim." 2020 WL 2839294, at *5 n.12 (D. Del. June 1, 2020) (internal citations omitted), *report and recommendation adopted by* 2020 WL 8258362, at *1 (D. Del. June 18, 2020). Thus, I will examine ICON's counterclaims in accordance with Rule 8.

In order to establish a Lanham Act violation, ICON must show "1) that the defendant has made false or misleading statements as to his own product []; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

ICON's Answer does not specify which subsection of the DTPA applies. Subsection (a)(5) of the DTPA states that it is a deceptive trade practice to "[r]epresent that goods or services have . . . characteristics. . . or qualities that they do not have." 6 Del. C. § 2532(a)(5). Subsection (a)(12) more generally prohibits engaging "in any other conduct which similarly creates a likelihood of confusion or misunderstanding." *Id*. at (a)(12). The DTPA "has a lower burden of proof than the Lanham Act since 'a complainant need not prove competition between the parties or actual confusion or misunderstanding.'" *Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 712 (D. Del. 2011). Additionally, relief under the DTPA "is dependent on [the party's] entitlement to injunctive relief." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *10 (Del. Ch. 2009). As neither party makes any specific arguments with respect to the DTPA, I will begin with ICON's Lanham Act claims.

### i. Peloton's Statements Concerning Innovation

ICON's counterclaims state that Peloton has made false claims in advertisements regarding its status as an innovator and as a tech company. (D.I. 27 at ¶¶ 58-64). As an example, ICON points to Peloton's statement that it is a "very hardcore technology company. We make a tablet computer better than apple . . . We are as hardcore of a tech shop as anything in NYC right now." (*Id*. at ¶ 58). Peloton has also stated that its Bike is the "first of its kind." (*Id*. at ¶ 59). ICON contends that these statements have no basis in fact, particularly because Peloton licenses the relevant technology from ICON. (D.I. 46 at 11-12).

Peloton argues that these allegations fail under the Lanham Act for three reasons: (1) statements concerning innovation are non-actionable puffery; (2) even if Peloton did claim to have invented certain technology, misrepresentations about inventions are not actionable under the Lanham Act; and (3) ICON has not alleged that the public was actually misled. (D.I. 40 at 13-15).

"Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true." *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008). Puffery, which is not actionable under the Lanham Act, "is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co*., 987 F.2d 939, 945 (3d Cir. 1993). False advertising claims under the Lanham Act "do not encompass misrepresentations about the source of the ideas embodied in the object." *Parks LLC v. Tyson Foods, Inc*., 863 F.3d 220, 227 (3d Cir. 2017) (quoting *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015)).

Peloton's statements concerning its status as an "innovator" and "hardcore technology company" are non-actionable puffery. Whether a company is "innovative" or "hardcore" is not subject to objective measurement. *See Robert Bosch*, 632 F. Supp. 2d at 367 (finding that statements that a product was "'[i]mproved' and 'innovative' are certainly statements of puffery as both statements are opinions and cannot be proved to be false"). Insofar as ICON argues that Peloton cannot claim to be innovative because it "copied pre-existing technology," such an allegation is similarly non-actionable under the Lanham Act because it amounts to a "false attribution of authorship." *Id*. at 366 (noting that falsely claiming an "innovation" is "not an actionable false statement under § 43(a)"); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006) (rejecting a Lanham Act claim where, "All of the statements asserted by [Counterclaim Plaintiff] boil down to [Counterclaim Defendant's] alleged passing off [Counterclaim Plaintiff's technology] as its own.").

Peloton's statement that its Bike is the "first of its kind" is also non-actionable. (D.I. 27 at ¶ 58). In *Robert Bosch*, the court considered the phrase "new and improved" and acknowledged that the term "new" was a close call because "because it embodies the concept of chronology and time which can be scientifically proven." *Robert Bosch*, 632 F. Supp. 2d at 367. The Court nonetheless concluded, "phrases like 'new and improved' are classic puffery." *Id*. (citing cases). I do not see a meaningful distinction between broad phrases like "new and improved" and "first of its kind."

Thus, ICON's Lanham Act claims concerning "innovation" fail to state a claim under the Lanham Act and Peloton's motion to dismiss these claims is GRANTED. Since there is a possibility that ICON may be able to re-plead these claims in a manner consistent with the Lanham Act's requirements, I will dismiss without prejudice.

ii.     Peloton's Statements Concerning Competition

ICON's counterclaims challenge statements by Peloton's CEO implying that Peloton has no competitors. As examples, ICON cites the statement, "Nobody else provides them, so we're kind of a category of one,"[3] and Peloton's explanation of a purchasing decision to "get a cost advantage over future competitors that we don't have yet." (D.I. 27 at ¶ 65).

Peloton argues that these quotations are "non-actionable statements of personal opinion." (D.I. 40 at 16). I agree that the CEO's statements constitute broad, generalized claims of superiority that are not actionable under the Lanham Act. *See Castrol*, 987 F.2d at 945. Nothing in these statements refers to a specific product or characteristic and nothing about the context in which they were offered (an interview with the Peloton CEO) suggests that the statement "takes on the characteristics of a statement of fact." *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 349 (D.N.J. 2019) (quoting *Pizza Hut, Inc. v. Papa John's Int'l*, 227 F.3d 489, 501-02 (5th Cir. 2000)). Courts have rejected similarly broad language that a product is "a step above the rest" or that a company is an "industry leader" as non-actionable under the Lanham Act. *See EP Henry,* 383 F. Supp. 3d at 350-51 (finding statements that products are the "best," "a step above the rest," and that "nothing surpasses them" to be puffery); *see also Trex Co. v. CPG Int'l LLC*, 2017 WL 3272013, at *8 (W.D. Va. Aug. 1, 2017) (citing cases).

Thus, I find that ICON's Lanham Act allegations concerning "competition" fail to state claims upon which relief may be granted. Peloton's motion to dismiss the claims based on these allegations is GRANTED. As above, I will dismiss these claims without prejudice.

---

[3] Peloton also argues that ICON failed to give proper context for this quotation and points out that the antecedent basis for "them" is not the Peloton Bike. (D.I. 47 at 10). However, this relies on material outside of the pleadings and I may not consider such evidence on a Rule 12(b)(6) motion.

### iii. Advertisements Concerning Peloton's Music Offerings

Lastly, ICON alleges that Peloton has engaged in a misleading, bait and switch advertising scheme with respect to the availability of music on its platform. (D.I. 27 at ¶¶ 44, 51, 53). ICON's counterclaims cite four different Instagram posts advertising playlists, with captions that read:

> Fall into your new favorite tracks. Click the link in our bio to find our brand-new Fresh for Fall @spotify playlist. #ridepeloton
>
> You asked, we delivered! Now you can view class playlists to find the perfect tunes for your on-demand ride. Ready to jam out? Click the link in our bio to learn more. #ridepeloton
>
> Jam out, Peloton style! Tap the link in our bio to tune in to our brand new @spotify playlists updated weekly and curated by our instructors and HQ team. #ridepeloton
>
> Big news! Now you can easily see the artists and songs powering your on-demand rides. Tap the link in our bio to learn more. #ridepeloton

(*Id*. at ¶ 48). ICON argues that these Instagram posts, coupled with a 2019 copyright lawsuit related to Peloton's music streaming, indicate that Peloton was advertising music that it lacked a license to or would not be able to maintain in the future. (*Id*. at ¶ 49).

While none of the Instagram posts reference any artist or song in particular[4] and the imagery accompanying them is generic, I understand ICON's allegations to be that the playlists linked in the Instagram posts contained music that Peloton lacked a license to or soon removed from its platform. (*See id*. at ¶¶ 48-49). ICON specifically cites "*Thugz Mansion, Closer to the Heart, Clique, 300 Violin Orchestra*, [and] *Straight Up*" as examples. (*Id*. at ¶ 49). In response,

---

[4] ICON's counterclaims later provide two Instagram posts where Peloton advertised a Jennifer Lopez Artist Series Class and a Lizzo Artist Series Class. (D.I. 27 at ¶ 50). However, ICON does not allege that these classes did not occur as scheduled, only that, "Peloton also lacked licenses to certain Jennifer Lopez and Lizzo songs." (*Id*. at ¶ 51).

15

Peloton argues that these Instagram posts "advertise only the availability of Peloton's playlist feature." (D.I. 40 at 18).

Taking the allegations in the counterclaims in the light most favorable to ICON, as I am required to do, I find that ICON has stated a sufficient claim for relief under the Lanham Act. ICON has plausibly alleged that a consumer could be misled by Peloton's playlist posts into believing that certain music would be available on its platform and in its classes. *Castrol*, 987 F.3d at 943 (explaining that under the Lanham Act, "the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers") (quoting *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 977 (2d Cir. 1988)). Telling consumers that they can "find the perfect tunes for [their] on demand ride[s]" and "see the artists and songs powering your on-demand rides" and linking to specific playlists reasonably suggests that the songs contained in the playlists are available on Peloton's platform. (D.I. 27 at ¶ 48).

Accordingly, Peloton's motion to dismiss ICON's Lanham Act claims relating to Peloton's music advertisements is DENIED.

iv. **ICON's Claims under the DTPA**

Courts in this District typically treat DTPA claims and Lanham Act claims as rising and falling together, while accounting for the lower pleading burden under DTPA. *See, e.g.*, *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (citing to its Lanham Act analysis in dismissing DTPA claims); *Monsanto*, 443 F. Supp. 2d at 655 (holding that the DTPA "allegations fail for the same reasons as the Lanham Act claim fails"); *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 249 n.17 (D. Del. 1980) (concluding that "[Plaintiff] is entitled to no greater relief for . . . for violation of the Deceptive Trade Practices Act than for violation of the Lanham Act").

My conclusions as to the "innovation" and "competition" Lanham Act claims did not turn on a lack of actual confusion or misunderstanding or a lack of competition between the parties, so the DTPA's lower pleading standard does not impact the Court's analysis. *See Keurig*, 769 F. Supp. 2d at 712. Thus, Peloton's motion to dismiss ICON's "innovation" and "competition" DTPA claims is GRANTED, also without prejudice.

Similarly, because ICON has satisfied the Lanham Act requirements in pleading its counterclaim addressing Peloton's music-based advertisements, I will not dismiss ICON's related counterclaim under the DTPA. *See Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 676 (D. Del. 2010). Peloton's motion to dismiss ICON's allegations under the DTPA focused on Peloton's music offerings is DENIED.

## IV. CONCLUSION

An appropriate order will issue.