IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PELOTON INTERACTIVE, INC., Plaintiff and Counter-Defendant, | ) | C.A. No. 20-662 (RGA) |
| v. | ) | PUBLIC VERSION<br>Confidential Version Filed: May 2, 2022<br>Public Version Filed: May 10, 2022 |
| iFIT INC., Defendant and Counterclaimant. | ) | |

**PLAINTIFF PELOTON INTERACTIVE, INC.'S OPPOSITION TO IFIT, INC.'S MOTION TO FILE SECOND AMENDED AND SUPPLEMENTAL COUNTERCLAIMS AND SUPPLEMENTAL AFFIRMATIVE DEFENSES**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Peloton Interactive, Inc.*

OF COUNSEL:

Steven N. Feldman
Clement Naples
Joseph C. Akalski
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-2927

Lawrence J. Gotts
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637- 2200

David F. Kowalski
Patrick C. Justman
Adam Alexander Herrera
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876- 7700

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000


May 2, 2022

# TABLE OF CONTENTS


I. INTRODUCTION .....1

II. NATURE AND STAGE OF PROCEEDINGS .....1

III. SUMMARY OF ARGUMENT .....2

IV. FACTUAL BACKGROUND .....3

A. Peloton Produced [redacted] to Echelon, Which Had the Opportunity to Use Them in the IPR .....3

B. Peloton's IPR Argument Was That Archived Classes, In Combination With The Leaderboard, Drove Peloton's Bike Sales .....4

C. The [redacted] Are Not Inconsistent With Peloton's Arguments .....5

D. iFIT Delayed And/Or Avoided Seeking Additional Discovery .....5

V. ARGUMENT .....7

A. The Court Should Deny iFIT's Motion Under Rule 16 .....7

1. iFIT Long Ago Possessed All Relevant Facts .....7

2. iFIT Did Not Need To Wait For The PTAB's Final Written Decision .....10

B. The Court Should Deny iFIT's Motion Under Rule 15 .....11

1. iFIT's Motion Does Not Allege Any Actual Wrongdoing .....12

2. iFIT's Motion Is Futile Because Its Proposed Counterclaim Does Not Support A Reasonable Inference Of Intent To Deceive .....17

C. iFIT's Motion Should be Denied Because It Is Likely To Cause Undue Prejudice To Peloton And Appears To Have A Dilatory Motive .....19

VI. CONCLUSION .....20

# TABLE OF AUTHORITIES

## CASES

*Carrier Corp. v. Goodman Global, Inc.*,
49 F. Supp. 3d 430 (D. Del. 2014) .......... 10, 19

*Cordance Corp. v. Amazon.com, Inc.*,
255 F.R.D. 366 (D. Del. 2009) .......... 19

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.*,
C.A. No. 17-1574, 2020 WL 6286768 (D. Del. Oct. 27, 2020) .......... 7

*Depomed, Inc. v. Purdue Pharma L.P.*,
No. CV 13-571, 2017 WL 2804953 (D.N.J. June 28, 2017) .......... 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) .......... 18

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-cv-3770, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020) .......... 18

*Liberty Mut. Ins. Co. v. Progressive Cas. Ins. Co.*,
CBM2012-00003, Paper 8 (P.T.A.B. Oct. 25, 2012) .......... 16

*Long v. Wilson*,
393 F.3d 390 (3d Cir. 2004) .......... 20

*Red Clay Consol. Sch. Dist. v. T.S.*,
C.A. No. 10-784-LPS, 2011 WL 4498964 (D. Del. Sept. 27, 2011) .......... 20

*SRI Int'l Inc. v. Internet Security Sys., Inc.*,
817 F. Supp. 2d 418 (D. Del. 2011) .......... 20

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
2014 WL 2622240 (D. Del. June 11, 2014) .......... 7

*SunPower Corp. v PanelClaw, Inc.*,
C.A. No. 12-1633-MPT, slip op. (D. Del. Sept. 13, 2016) .......... 19

*SunPower Corp. v PanelClaw, Inc.*,
C.A. No. 12-1633-MPT, 2016 WL 5107029 (D. Del. Sept. 19, 2016) .......... 16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011). .......... 12, 17, 20

*Wright Asphalt Prod. Co., LLC v. Pelican Ref. Co., LLC.*,
No. 09-cv-1145, 2011 WL 2037631 (S.D. Tex. May 20, 2011) .......... 17

## RULES

37 CFR § 42.51(b)(1)(iii) ........ 15

Fed. R. Civ. P. 15 ........ 2, 11

Fed. R. Civ. P. 16 ........ 1

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| 1 | Excerpts from Deposition of Jacob Proffitt (Jan. 7, 2022) |
| 2 | Letter from B. Schladweiler to M. Salerno (April 28, 2021) |
| 3 | Letter from M. Salerno to B. Schladweiler (May 19, 2021) |
| 4 | Excerpts of Patent Owner's Response (Sealed) in *Echelon Fitness Multimedia, LLC v Peloton Interactive, Inc.*, IPR2020-01541 (June 11, 2021) |
| 5 | Excerpts of Patent Owner's Response (Redacted) in *Echelon Fitness Multimedia, LLC v Peloton Interactive, Inc.*, IPR2020-01541 (June 11, 2021) |
| 6 | Patent Owner's Surreply in *Echelon Fitness Multimedia, LLC v Peloton Interactive, Inc.*, IPR2020-01541 (Oct. 22, 2021) |
| 7 | Excerpts of Dec. 2, 2021 Oral Hearing in *Echelon Fitness Multimedia, LLC v Peloton Interactive, Inc.*, IPR2020-01541 |
| 8 | Excerpts from Deposition of Tom Cortese (March 3, 2022) |
| 9 | Exhibit 12 from deposition of Tom Cortese (March 3, 2022) |
| 10 | Excerpts of Final Written Decision in *Echelon Fitness Multimedia, LLC v Peloton Interactive, Inc.*, IPR2020-01541, Paper 54 (March 2, 2022) |
| 11 | Order (Denial of Grounds) in *Liberty Mutual Ins. Co. v. Progressive Casualty Ins. Co.*, CBM2012-00003 |
| 12 | Excerpts from Deposition of Ryan Dillon-Curran (Jan. 27, 2022) |

## I. INTRODUCTION

iFIT moved to stay this case earlier this year, expecting the PTAB to invalidate Peloton's asserted Patent No. 10,486,026 (the "'026 Patent") in Echelon's *inter partes* review ("IPR"). The Patent Trial and Appeal Board ("PTAB"), however, rejected Echelon's IPR arguments and confirmed the patentability of the '026 Patent claims. iFIT now seeks to upend this case by asking the Court to add an inequitable conduct counterclaim and affirmative defense *months* after the deadline to do so. The Court should deny this tardy motion for leave to amend.

*First*, iFIT has had the information on which its motion is based for *nine months.* iFIT's motion is untimely, and iFIT does not show the "good cause" required to modify the Scheduling Order under Fed. R. Civ. P. 16.

*Second,* it is undisputed that Peloton did *in fact* disclose the very [redacted] at issue to Echelon (and iFIT)—the most that the PTAB's rules would require even if the [redacted] were inconsistent with Peloton's arguments (and they are not). Peloton's disclosure to Echelon precludes any reasonable inference of a specific intent to deceive. Most certainly, iFIT could never prove that the single most probable conclusion based on the evidence is a specific intent to deceive. Accordingly, iFIT's motion to amend should be denied under Fed. R. Civ. P. 15 as well.

## II. NATURE AND STAGE OF PROCEEDINGS[1]

This case is nearly two years old and is nearing trial. The parties completed claim construction nearly a year ago, completed fact discovery in February, and served opening expert reports in March. The day after those reports were served, iFIT sought leave to add an inequitable conduct counterclaim and defense targeting Peloton's litigation counsel.

[1] Alphabetical exhibits refer to exhibits to iFIT's Opening Brief in support of its Motion to Amend (D.I. 290). Numerical exhibits refer to exhibits to this brief.

## III. SUMMARY OF ARGUMENT

iFIT's proposed counterclaim does not allege inequitable conduct occurring during *ex parte* prosecution, but in an IPR proceeding involving Peloton's asserted '026 Patent initiated by Echelon Fitness Multimedia, LLC ("Echelon"), the defendant in another patent case pending before this Court. IPRs are adversarial proceedings, and Echelon (which possessed the allegedly "withheld" documents but chose not use them in the PTAB proceedings) zealously tried to convince the PTAB that the '026 Patent claims are obvious.

The Court should deny iFIT's motion under both Rules 15 and 16.

*First*, iFIT's motion comes long after the deadline to amend the pleadings, including the deadline for adding inequitable conduct. iFIT must therefore show good cause, including that it acted diligently. iFIT cannot make that showing because iFIT knew all of the facts underlying iFIT's proposed counterclaim more than nine months ago. Although iFIT makes vague allegations about redactions, none of the redactions were in the portion of the "nexus" briefing on which iFIT bases its proposed counterclaim. iFIT never previously claimed Peloton withheld anything from the PTAB, instead moving the Court to stay this litigation on January 12, 2022, arguing that "in light of the record to date before the PTAB, there is *very little risk* that any of Peloton's claims will be upheld." D.I. 234 at 8 (emphasis added). Only after the PTAB confirmed the patentability of the '026 Patent claims based on that record did iFIT first object to what happened earlier in the IPR.

*Second*, the Court should deny iFIT's motion for leave under Rule 15 because it is futile. The totality of iFIT's accusations about the alleged "withholding" and "misleading" arguments revolve around iFIT's characterization of the two Peloton [redacted] at issue. Peloton indisputably provided those documents to Echelon, which is all that is required under the PTAB's rules even assuming the documents are "inconsistent" with Peloton's arguments, which they are

not. Moreover, the Protective Order (here and in the Echelon case) *specifically permitted* the use of district-court produced documents in IPR. Echelon was thus free to file the [redacted] to support its arguments to the PTAB (if it deemed them helpful), but it did not.

These facts render iFIT's motion futile. Peloton properly produced to Echelon the documents in question, which precludes any reasonable inference that Peloton's counsel specifically intended to deceive the PTAB. iFIT's motion is nothing more than an attempt to avoid litigating this case; if granted, it will likely lead to additional discovery, extensions of the schedule, or a motion to disqualify Peloton's litigation counsel. The Court should deny iFIT's motion and allow this case to progress to trial.

## IV. FACTUAL BACKGROUND

Peloton identifies below the many relevant facts iFIT's motion omits.

### A. Peloton Produced [redacted] to Echelon, Which Had the Opportunity to Use Them in the IPR

On May 15, 2020, Peloton filed this case accusing iFIT of infringing the '026 Patent. On September 1, 2020, Echelon, a defendant in related action C.A. 19-1903 (D. Del.) (the "-1903 Action"), filed a petition requesting IPR of the '026 Patent.[2] On March 3, 2021, the PTAB instituted IPR. Peloton filed its Patent Owner Response ("POR") on June 11, 2021. That POR and certain exhibits included confidential information and were filed under seal. Redacted versions of the POR and confidential exhibits filed on the same day were immediately available to iFIT and the public.

Two weeks later, as iFIT admits, Peloton produced documents in the district court cases to both Echelon and iFIT that included the two [redacted] at issue. (D.I. 290 at 7). The

---

2 [redacted]

Stipulated Protective Orders in both cases provided for the use of confidential documents, including those related to secondary considerations, in the IPR, stating under the heading "**USE OF CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION FOR PTAB PROCEEDINGS**":

> Upon consent of the Producing Party, parties and attorneys with access to [confidential] documents and testimony . . . that pertain to the validity, of the patents (including, for example, documents and testimony related to secondary considerations) asserted in this action, shall be permitted to submit such documents and testimony as evidence in post-grant proceedings before the Patent Trial and Appeal Board ("PTAB")…A Producing Party . . . *shall not withhold consent for document submissions in the PTAB related to secondary considerations*.

-1903 Action, D.I. 71 at § 6.4 (emphasis added); *see also* D.I. 63 at § 6.4.[3]

### B. Peloton's IPR Argument Was That Archived Classes, In Combination With The Leaderboard, Drove Peloton's Bike Sales

In its POR, Peloton argued that certain objective evidence supported the patentability of the '026 Patent claims. Exs. 4, 5, § VI, POR at 51. The objective evidence section of the POR is comprised of a subsection on nexus (§ VI.A) and subsections relating to commercial success, long-felt need, and other objective indicia of non-obviousness (§§ VI.B – VI.F). *Id.* at 52-73. iFIT's motion is based exclusively on alleged inconsistencies between the [redacted] and arguments in subsection VI.A.2 of the POR, the entirety of which was unredacted. In the remaining objective considerations subsections, redactions only appear in the section on commercial success (VI.B), which is not at issue in iFIT's proposed counterclaim. *Id.* at 67-68.

In the unredacted nexus section VI.A.2 of the POR, Peloton argued that it was the ***combination*** of archived classes ***and*** the leaderboard that had a nexus to the objective indicia.

---

[3] Echelon was keenly aware of the [redacted], in as much as they were specifically addressed in correspondence leading up to the production. *See, e.g.*, Ex. 2 at 2 (noting Peloton has agreed to produce the 2019 Member Survey); and Ex. 3 at 3 (Peloton agreeing to produce consumer surveys which contain "purchase criteria for customers who have purchased the Peloton Bike").

Specifically, Peloton argued that the Peloton Bike provides "on-demand availability of exercise classes" and "the on-demand availability of synchronized, archived performance data." *Id.* at 63. Peloton went on to argue that the "invention allows riders to compete, on-demand, with a host of other riders based on a comparison of the rider's own performance parameters against the synchronized, archived users' performance parameters." *Id.* at 64. Peloton made similar arguments in its October 22, 2021 Patent Owner Sur-Reply ("POSR"), the entirety of which was unredacted, and at the December 2, 2021 oral hearing, which was open to the public. Ex. 6, POSR at 25; Ex. 7, IPR Tr. at 34 (citing exhibit 2040 at 4, 7); *see also id.* at 46 ("[users] buy the Bike and Bike+ for archived classes and competition on a leaderboard.").

### C. The [redacted] Are Not Inconsistent With Peloton's Arguments

The two [redacted] show that the [redacted] Ex. B at -400; Ex. C at -168. They also list certain features and the [redacted] Ex. B at -404, Ex. C at -172. In 2017, u[redacted] Ex. C. at -172. [redacted] *Id.*

### D. iFIT Delayed And/Or Avoided Seeking Additional Discovery

Between November 9, 2021, and March 8, 2022, iFIT took over a dozen fact depositions in this litigation, many of which were of witnesses knowledgeable about the marketing and sales of Peloton's products, including:

- 1/21/22, 2/9/22: Rebecca Charap, Director of Global Product Marketing and Carolyn Tisch Blodgett, former Head of Global Marketing, who were each identified as having knowledge relating to marketing and advertising of Peloton's products;
- 2/9/22: Joseph Intonato, Peloton's former VP of Product Design and User Research;

- 2/15/22: Bradley Greenawalt, Peloton's VP of Membership;
- 2/16/22: John Foley, Peloton's former CEO; and
- 2/23/22: William Lynch, former President of Peloton, who was identified as having knowledge relating to commercialization and marketing of Peloton's products.

iFIT asked no questions about the two [redacted] at issue, which Peloton had produced more than six months earlier. On January 27, 2022, iFIT deposed Ryan Dillon-Curran, Peloton's 30(b)(6) designee on a topic that included marketing surveys relating to any Peloton products. [redacted] Ex. 12, Dillon-Curran Tr. (01/27/2022) at 210:11-211:16.

The lone exception was iFIT's deposition of Tom Cortese, Peloton's Chief Product Officer, which iFIT took *after* the PTAB confirmed the '026 Patent claims as patentable. iFIT asked Mr. Cortese about a [redacted] Ex. 8, Cortese Tr. (03/03/2022) at 154:19-164:21. The [redacted] shown to Mr. Cortese included the same graph from the [redacted] to which iFIT's proposed counterclaim cites. *Compare* Ex. C at -172 with Ex. 9 at -341. [redacted]. Ex. 8 at 161:25-162:2. Mr. Cortese explained that Peloton's on-demand classes and leaderboard are the main drivers of Peloton's success, testifying that it was "really clear the on-demand class offering [is] extremely important." *Id.* at 162:6-7. Mr. Cortese further explained that

> the way in which community, you know, weaves itself through the Peloton experience and -- and drives consumer delight and consumer delight drives word-of-mouth passalong, which drives -- which drives demand. Whether or not -- whether or not folks explicitly call it out the phrase "leaderboard," it is -- it is clear and obvious through our success in the market the -- the descriptions of -- of in-customer reviews and press reviews that the value of the group class that is -- that comes through our broad leaderboard technology is -- is a massive differentiator…

*Id.* at 162:22-163:8. When asked whether he was aware of anything else that demonstrates commercial success of Peloton products is related to leaderboards, Mr. Cortese responded: "the clearest example was that, you know, we were able to bring product to market with this unique feature and – and, you know, drive not-before-seen consumer adoption." *Id.* at 68:17-69:6.

## V. ARGUMENT

### A. The Court Should Deny iFIT's Motion Under Rule 16

The Court should deny iFIT's motion because it comes well after the deadline to amend, and fails to meet Rule 16's rigorous "good cause" standard.[4] "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, C.A. No. 17-1574, 2020 WL 6286768, at *2 (D. Del. Oct. 27, 2020) (citation omitted). iFIT had all relevant facts long ago, but waited until after the close of fact discovery and opening expert reports to bring its motion.

#### 1. iFIT Long Ago Possessed All Relevant Facts

Realizing that its motion comes too late, iFIT first blames its delay on "Peloton's over-designation of sealed material in the IPR." D.I. 290 at 12. This is demonstrably wrong – Peloton did not redact ***any of the documents relevant to iFIT's argument***. iFIT's inequitable conduct accusations are premised on Peloton's alleged failure to disclose the two [redacted] which iFIT contends are inconsistent with Peloton's argument about what aspects of Peloton's Bike drove sales. D.I. 290 at 7-8. According to iFIT, Peloton argued to the PTAB that the leaderboard drove sales of Peloton's Bikes, despite the [redacted]. *Id.* at 8. The entirety

[4] Although Peloton addresses iFIT's inequitable conduct counterclaim, the arguments herein apply equally to iFIT's affirmative defense, as they rise or fall together. *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, C.A. No. 12-441-RGA, 2014 WL 2622240, at *1 n.1 (D. Del. June 11, 2014) (citations omitted).

of the relevant arguments in Peloton's POR, Sur-Reply, and oral hearing pertaining to what drove sales of the Peloton Bikes were unredacted and available to iFIT immediately.

The only briefing that had ***any*** redactions was Peloton's POR. iFIT argues that it could not tell what nexus arguments Peloton made because of its redactions; the redacted POR proves otherwise. Ex. 5. The Table of Contents indisputably shows that in Section VI, Peloton argued that "Objective Evidence Further Demonstrates the Patentability of the Challenged Claims," and in subsection A argued that "A strong nexus exists between the objective evidence and the merits of the claimed invention." Exs. 4, 5 at ii-iii. Within that subsection, Peloton made two arguments – first that "[t]he presumption of nexus applied because at least the Peloton Bike and Bike+ practice challenged claims" and second that "[a] nexus exists between the objective indicia of non-obviousness and the claimed invention." *Id.* iFIT's counterclaim relies solely on that final section, which has no redactions and does not cite to any redacted documents. *Id.* at 63-66. iFIT was therefore on notice of Peloton's arguments. And its reliance on other POR sections is unavailing, as the unredacted headings left no doubt as to the subject of the redacted material.

For example, redactions appear in the POR section arguing that "The Peloton Bike is coextensive with the claimed invention." Exs. 4, 5 at 52-62. The subheadings in that section demonstrate the redacted material pertains to the operation of the Peloton Bike, for example how it meets the "synchronize archived performance data" limitation:

> **<u>[1.4.8]/[11.10] synchronize archived performance data</u>**
>
> [redacted]

The only other redactions are from the section addressing commercial success. *Id.* at 66-68. The

redactions are plainly of confidential financial information:

> Peloton's commercial success is not limited to the past year. [redacted] Ex. 2023 at 6. [redacted]

And while iFIT complains that certain exhibits to the POR were redacted, the Exhibit List was not. *Id*. at vii-xv. For example, "Ex. 2023" from the excerpt above is listed as "FYE 2016 U.S. Bike Portfolio Gross Margin Summary":

| | |
|---|---|
| 2023 | FYE 2016 U.S. Bike Portfolio Gross Margin Summary (HIGHLY CONFIDENTIAL—AEO & REDACTED VERSIONS) |

Similarly, Exhibit 2098, which iFIT cites as a redacted exhibit it could not have known the contents of, is listed in the Exhibit List as "Market Map Discussion presentation (2019)." *Id.* at xv. And, importantly, that Exhibit is only cited in the "commercial success" portion of the POR. *Id.* at 68. With this information, iFIT knew or should have known the day Peloton filed its POR that Peloton did not rely on the [redacted] in its arguments to the PTAB. iFIT's claim that it "now knows (because of a production on March 9, 2022)" what these redacted documents included (D.I. 290 at 5) is wrong. In reality, the question of whether iFIT even reviewed the POR Exhibit List answers itself.[5]

iFIT fails to cite to any part of its inequitable conduct argument that was redacted in Peloton's POR. If iFIT truly believed that Peloton's nexus arguments and failure to disclose the [redacted] constituted inequitable conduct, it should have filed this motion promptly after

---

[5] Had iFIT reviewed the publicly available unredacted Exhibit List and exhibits it would have known with a certainty that the [redacted] in question were not cited in the POR. That iFIT allegedly waited for unredacted exhibits to confirm (and did not ask Echelon whether Echelon was going to file the allegedly but-for material [redacted] in the IPR) is not credible.

Peloton filed its POR, and certainly after Peloton's Sur-Reply and the oral hearing, in which Peloton publicly maintained its arguments. Further, iFIT did not ask any Peloton deponents about the [redacted], including Peloton's 30(b)(6) designee on "marketing surveys relating to any Peloton products," even though they were produced to iFIT *seven months* earlier. This is far from diligence, and the Court should deny iFIT's motion for this reason alone. *See Carrier Corp. v. Goodman Global, Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014) (denying motion to amend where inequitable conduct allegation "rests on a document produced nearly seven months prior" and movant "did not ask the [witnesses] about the [topic] during their depositions").

**2. iFIT Did Not Need To Wait For The PTAB's Final Written Decision**

iFIT's only other justification is that the relevant events "did not fully crystallize" until the PTAB issued its final written decision "confirming the materiality of Peloton's omissions and misrepresentations." D.I. 290 at 11-12. The premise of that argument—that movants need to wait for the PTAB to fully resolve an IPR before they can raise inequitable conduct—cannot be correct.

iFIT correctly points out that there are two types of inequitable conduct. Either the withheld reference must be "but-for" material, or the patentee must have engaged in "affirmative egregious misconduct," in which case materiality need not be proven. D.I. 290 at 16-17. iFIT's motion is not clear as to which category it alleges. To the extent any portion of iFIT's argument is based on "affirmative egregious misconduct," then materiality need not be shown, and iFIT indisputably did not need to wait for the PTAB's final written decision to confirm materiality.

If iFIT's argument is premised on Peloton's alleged omissions being "but-for" material, its argument that it had to wait for the final PTAB decision still fails. Although the PTAB's final written decision could reflect on materiality, a litigant need not wait for that decision to argue that if the PTAB allows the claims, the alleged wrongdoing would be "but-for" material. The classic inequitable conduct scenario occurs during patent prosecution where the Examiner was never

made aware of an omission, and the patent issues. The accused infringer then argues that, on information and belief, the Examiner ***would not*** have allowed the patent but-for the omission. Thus, the pleading is based on an action that the Examiner ***never*** took. Courts do not reject such accusations for failing to meet the *Exergen* standard because the Examiner's hypothetical actions cannot be known.

Once iFIT knew of the Peloton acts at issue, it should have moved to amend. Like the defendant in a typical inequitable conduct situation, it could have based its pleading on what it believed the PTAB would do given Peloton's actions as well as what it believed the PTAB would have done but for those actions. Instead, iFIT did nothing, assuming that the PTAB would invalidate the '026 Patent, and only when the PTAB did not did iFIT seek to amend.[6] That is not diligence.

### B. The Court Should Deny iFIT's Motion Under Rule 15

The Court should also deny iFIT's motion as futile under Rule 15(a)(2). Even the incomplete facts laid out in iFIT's proposed counterclaim do not allege any wrongdoing under PTAB procedures and certainly do not support a reasonable inference that Peloton's counsel acted with the specific intent to deceive. Nor could iFIT ever ultimately prove, as Federal Circuit law requires, that "the single most reasonable inference able to be drawn from the evidence" was that Peloton intended to deceive the PTAB. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Furthermore, the timing and nature of iFIT's motion support an inference that iFIT is acting with a dilatory motive.

[6] The likely explanation is that iFIT was confident Echelon would prevail in the IPR (D.I. 215 at 5), or otherwise simply failed to diligently develop and explore its purported theory. Following Echelon's loss, iFIT sought to raise its untimely counterclaim and blame Peloton for its delay.

### 1. iFIT's Motion Does Not Allege Any Actual Wrongdoing

The premise behind iFIT's proposed counterclaim is that Peloton allegedly violated PTAB procedures by not disclosing the two [redacted] at issue. That premise is wrong; Peloton produced the [redacted] to its adversary Echelon for use in the *inter partes* adversarial proceeding, fulfilling its PTAB responsibilities. Echelon chose not to file and rely on the [redacted].

#### a. The [redacted] Are Not Inconsistent With Peloton's Arguments

iFIT repeatedly (and wrongly) argues that Peloton's IPR position was that the commercial success of the Peloton Bike was tied "to the leaderboard functionality." D.I. 290 at 3, 17-18. iFIT then argues that the two [redacted] show that [redacted] *Id*. at 7. Solely based on these two characterizations, iFIT argues that Peloton's IPR arguments are inconsistent with the [redacted]. iFIT is incorrect across the board.

*First*, Peloton never argued to the PTAB that the commercial success of the Peloton Bikes was tied solely to the leaderboard, arguing instead that it was tied to the ***combination*** of on-demand (archived) classes with the leaderboard. *See* Exs. 4, 5 at 63-64 (describing the "convenience of being able to take a class any time, on-demand"); Ex. 6 at 25-26 ("users revealed their true preferences for archived classes by taking them far more often"). Indeed, the portions of the oral hearing iFIT cites show Peloton making this precise point, arguing that users are buying Peloton Bikes "for these archived classes ***and*** for the leaderboard." D.I. 290 at 4. The PTAB agreed, holding in its Final Written Decision (which iFIT alleges proves materiality) that "[Peloton] maintains that the claimed invention is a *combination* that provides on-demand classes simulating the competition of a live class with a dynamically updated ranked list of a performance parameter, and that *this combination* has driven the success of its Bike product." Ex. 10 at 56 (emphasis added).

*Second*, Peloton explained the methodology behind its argument. In its IPR briefing and at the oral hearing, Echelon did not present the [redacted] at issue to rebut Peloton's arguments. Echelon instead argued that Peloton failed to meet its burden to show nexus, including by not presenting any "survey evidence." Ex. 7 at 19; *see also id.* at 41:15-16 ("You know, what they don't have is any survey evidence"); *id.* at 43:3-4 ("there's no survey evidence").[7] In response, Peloton explained that the most relevant evidence was actual usage. Various Peloton documents presented to the PTAB demonstrate nexus through users' "revealed preferences" for archived classes and the leaderboard—actual user usage data demonstrating that users far prefer archived over live classes. *Id.* at 34:1-19, 45:20-46:9 (the actual user data "overwhelmingly show that they buy the Bike and the Bike+ for the archived classes offered by Peloton"). This is precisely what Mr. Cortese, Peloton's Chief Product Officer, explained at deposition, testifying that "consumer adoption" is "one of the biggest indicators" of what drove commercial success.[8] *See* Ex. 8 at 67:7-13; *id.* at 69:1-6 ("[T]he clearest example was that, you know, we were able to bring product to market with this unique feature and -- and, you know, drive not-before-seen consumer adoption.").[9]

Nor are the [redacted] inconsistent with Peloton's arguments to the PTAB. As addressed above, Peloton argued that the combination of on-demand classes and a leaderboard that

---

[7] This repeated invocation of "survey evidence" proves that Echelon was keenly aware of the [redacted], but chose not to use them.

[8] iFIT's repeated allegation that Mr. Cortese testified that [redacted] (D.I. 290 at 7, 18; *id.* at Ex. A, ¶ 205) ignores this testimony and mischaracterizes both the cited question and Mr. Cortese's answer.

[9] The [redacted] were of limited probative value because of the [redacted]. *See* Ex. C. at -198.

synchronizes a user's data with archived data from previous users established a nexus to commercial success. Exs. 4, 5 at 63-64. The [redacted] fully support that argument, which is likely why Echelon chose not to rely on them before the PTAB. While iFIT contends that the 2016 and 2017 [redacted] (D.I. 290 at 7 (citing Ex. B at -404; Ex. C at -172)), iFIT ignores various other features [redacted] *See, e.g.*, Ex. C at -172. [redacted] which is entirely consistent with Peloton's argument to the PTAB that the combination of archived classes and the leaderboard drive sales of the Peloton Bikes.[10] Ex. C at -172, -175.

**b. Peloton Followed PTAB Procedure**

iFIT next argues that Peloton violated PTAB procedure when it did not "disclose[]" the two [redacted] "to the PTAB." D.I. 290 at 19. Unlike inequitable conduct claims which stem from a prosecuting attorney's actions during *ex parte* patent prosecution (in which a patentee can *only* disclose to the Patent Office), iFIT's counterclaim is based on Peloton's actions during an adversarial IPR proceeding where the rules require that the patentee produce materials *to the adversarial party*. Because the entirety of iFIT's proposed counterclaim involves documents that Peloton produced to Echelon (and to iFIT), iFIT cannot show an improper act by Peloton.

*Ex parte* examination has a mechanism—Information Disclosure Statement (IDS)—that allows Applicants to cite to the Examiner relevant patents and publications. IPR does not have IDSs because it is adversarial. Instead, as iFIT acknowledges, IPRs require disclosure of

---

[10] The 2016 [redacted] did not list importance data for the [redacted] feature.

"inconsistent" information ***to the opposing party***, so that the opposing party can decide whether to use it:

> Unless previously served, a party must serve relevant information that is inconsistent with a position advanced by the party during the proceeding concurrent with the filing of the documents or things that contains the inconsistency.

37 CFR § 42.51(b)(1)(iii). Putting aside whether the [redacted] are "inconsistent" with Peloton's IPR position, Peloton indisputably produced them to Echelon. D.I. 290 at 7. Peloton's "compliance with 37 C.F.R. § 42.51(b)(1)(iii)" through production in the related litigation "cannot serve as the basis for a claim of inequitable conduct." *Depomed, Inc. v. Purdue Pharma L.P.*, No. CV 13-571, 2017 WL 2804953, at *8 (D.N.J. June 28, 2017) (dismissing inequitable conduct theory based on failure to produce allegedly inconsistent statements in IPR proceedings where the materials were produced in related litigation).[11] And iFIT cannot dispute that as discussed in Section IV.A, *supra*, the operative Protective Order allowed Echelon to use those documents in the IPR, but that Echelon declined to do so. Because Peloton produced the documents, iFIT's accusations boil down to—at worst—Peloton's attorneys zealously advocating for the validity of their patent within the rules set forth for IPRs. Ex. 11, *Liberty Mut. Ins. Co. v. Progressive Cas. Ins. Co.*, CBM2012-00003, Paper 8 at 14 (P.T.A.B. Oct. 25, 2012) ("It would be unfair to expect the Patent Owner to conjure up arguments against its own patent.").

iFIT does not cite a single case where allegedly omitted evidence was produced to the petitioner, and Peloton is not aware of one. Indeed, *Depomed* expressly rejected such a theory. And, *SunPower Corp. v PanelClaw, Inc.*, cited by iFIT, holds the opposite. C.A. No. 12-1633-

[11] While the documents in *Depomed* were produced before the IPR, their production in this case complies with the PTAB regulations, and the same logic applies. iFIT did not argue that the two weeks between service of Peloton's POR and production of the documents to Echelon constitutes inequitable conduct, and any such argument is waived. Regardless, that two weeks is not material.

MPT, 2016 WL 5107029 (D. Del. Sept. 19, 2016). Although the defendant in *SunPower* moved to add inequitable conduct allegations, and although certain allegations were based on omissions and misrepresentations before the PTAB, iFIT leaves out a fundamental detail. *Id.* at *1. In *SunPower*, the patentee *did not* produce the document which allegedly demonstrated the omissions and misrepresentations until it was too late for the petitioner to rely on it before the PTAB. *Id.* at *1-2, 23 (plaintiff failing to produce subject document until after final written decision). Here, Peloton produced the two documents at issue shortly after filing its POR and well before Echelon's Reply brief was due.

To be sure, iFIT includes vague language accusing Peloton of making "misrepresentations" as well as omissions. D.I. 290 at 17. However, iFIT admits that the alleged "mischaracterizations" are based solely on iFIT's view of the two [redacted]. But those documents were produced, and Echelon—represented by sophisticated counsel—was free to rely on them and argue their meaning. This is analogous to cases in which a party is accused of committing inequitable conduct for arguing for its interpretation of a reference that was before the Examiner. Federal Circuit law holds that "as a general rule, when the relevant prior art reference is disclosed to the examiner, attorney statements emphasizing differences between the invention and the prior art while downplaying or ignoring similarities cannot be inequitable conduct unless a prior art reference is so difficult to understand that omitting or understating aspects of it is functionally equivalent to not disclosing the prior art reference at all." *Wright Asphalt Prod. Co., LLC v. Pelican Ref. Co., LLC.*, No. 09-cv-1145, 2011 WL 2037631, at *6 (S.D. Tex. May 20, 2011) (surveying Federal Circuit precedent). That is precisely the situation here. At worst, iFIT accuses Peloton of arguing for its interpretation of the evidence. Peloton produced the evidence at issue to Echelon, which was free to argue a contrary interpretation. Echelon's decision not to do so does not constitute

inequitable conduct by Peloton.

**c. iFIT's Allegation of Continued Inequitable Conduct is Unfounded**

iFIT's claim that Peloton continues to commit inequitable conduct by failing to inform the PTAB of iFIT's allegations is futile. Ex. A at 71 ¶ 214. Peloton produced the [redacted] to Echelon long ago. And on April 21, 2022, Peloton and Echelon jointly informed the PTAB in the IPR of the '026 patent (in which Echelon is seeking rehearing) of iFIT's allegations and proposed a schedule for filing this briefing with the PTAB. Further, Echelon recently asked whether Peloton agrees that the Protective Order precludes Peloton from objecting to the use of the same documents in IPR2021-00848, relating to Peloton's U.S. Patent No. 10,639,521. Peloton responded that it does not object and cannot object to their use.

**2. iFIT's Motion Is Futile Because Its Proposed Counterclaim Does Not Support A Reasonable Inference Of Intent To Deceive**

Putting aside whether iFIT's proposed counterclaim lays out any actual wrongdoing, the Court should also deny iFIT's motion because it does not support a reasonable inference that the accused attorneys acted with the "specific intent to deceive" the PTAB, as required to meet the heightened pleading standard. iFIT would have the Court believe that Peloton's four litigation counsel independently or together intentionally decided to hide the documents at issue from the PTAB while nevertheless producing them to both Echelon and iFIT in the district court litigations. That would be an unreasonable inference based on the evidence.

More than a decade ago, the Federal Circuit heightened the standards for intent and materiality in an effort to reduce the number of inequitable conduct claims. The specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 290. The Federal Circuit explained that at the pleading stage, a pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer

that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).

As explained above, Peloton produced the [redacted] to Echelon. Peloton was not required to produce them to the PTAB. The only reasonable explanation from Peloton's production of these documents to Echelon is *not* that it intended to keep them from the PTAB; the whole purpose of producing them was to allow Echelon *to produce them to the PTAB*, if Echelon felt the documents were material. As another court recently explained, although "a party may fraudulently mislead judges and attorneys during adversarial proceedings" "the context of the proceeding is not irrelevant to intent to deceive." *Illumina, Inc. v. BGI Genomics Co.*, No. 19-cv-3770, 2020 WL 571030, at *4 (N.D. Cal. Feb. 5, 2020). The alleged "misrepresentations and/or false statements" in that case "all pertain[ed] to a construction of various prior art references that were available to the opposing parties and the decision-makers." *Id.* The court dismissed the inequitable conduct claim, as it was "implausible" that plaintiff's attorneys and expert "would knowingly make patently false statements about prior art that were contradicted by materials they cited and that could be readily exposed by the opposing party, and potentially even sanctioned by the tribunal." *Id.* at *5.

The result should be the same here. Even if iFIT's interpretations of Peloton's IPR arguments and the [redacted] were correct, and even if Peloton was required to do more than produce the [redacted] to Echelon, that is still insufficient to support a reasonable inference of the requisite specific intent to deceive.

### C. iFIT's Motion Should be Denied Because It Is Likely To Cause Undue Prejudice To Peloton And Appears To Have A Dilatory Motive

Should the Court reach the remaining factors considered under Rule 15, they too favor denying leave. Courts have held that "prejudice to plaintiff is inherent" where, as here, a motion to add inequitable conduct comes after the close of fact discovery. *See Carrier*, 49 F. Supp. 3d. at 433. iFIT argues that because Peloton has been in possession of the relevant facts, it *cannot* suffer prejudice. D.I. 290 at 14. But neither of the cases iFIT cites involved a situation where opening expert reports had already been served before the motion to amend was filed. *See Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 369 (D. Del. 2009) (motion to amend filed December 29, 2008); Scheduling Order, *Cordance Corp. v. Amazon.com, Inc.*, C.A. No. 06-491-MPT, slip op., at 2 (D. Del. Nov. 13, 2008) (setting opening expert disclosures on January 9, 2009); *SunPower*, 2016 WL 5107029, at *8 (motion to supplement amended answer filed April 5, 2016; and noting that "the schedule in this case is currently in flux and, therefore, granting defendant's motions would not affect any of the court's current deadlines"); Scheduling Order, *SunPower Corp. v PanelClaw, Inc.*, C.A. No. 12-1633-MPT, slip op., at 2 (D. Del. Sept. 13, 2016) (setting opening expert disclosures originally due September 9, 2016). Here, the case has progressed much further, and Peloton would undoubtedly be prejudiced by having to defend against an entirely new theory.

iFIT next argues that "because inequitable conduct is an issue for the Court" its proposed counterclaim "need not affect the schedule or any other aspect of this case." D.I. 290 at 14. While inequitable conduct is an issue for the Court, it is unclear how iFIT concludes that its counterclaim need not affect the schedule. *Id.* iFIT does not promise not to try and change the schedule. If iFIT intends to rest its inequitable conduct arguments on the facts and inference laid out in its proposed pleading, and forego *any* additional fact discovery or *any* expert discovery whatsoever, then perhaps the schedule need not change. If, however, iFIT intends to seek additional fact or

expert discovery, that would certainly upend the schedule, prejudicing Peloton. *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (causing a party to "expend significant additional resources to conduct discovery and prepare for trial" or to "significantly delay the resolution of the dispute" constitute prejudice); *Red Clay Consol. Sch. Dist. v. T.S.*, C.A. No. 10-784-LPS, 2011 WL 4498964, at *4 (D. Del. Sept. 27, 2011) (prejudice where plaintiff would have to conduct additional discovery, likely need additional expert analysis, and develop new legal theories).

Furthermore, iFIT's counterclaim targets four of Peloton's litigation counsel. As the Federal Circuit observed in *Therasense*, one reason inequitable conduct had become an "absolute plague," is that it "conveniently expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team." *Therasense*, 649 F.3d at 1288. iFIT's motion (which two of iFIT's outside law firms apparently declined to sign) is silent as to whether iFIT will seek the depositions of and/or seek to disqualify the accused Peloton counsel. Should it do so, that would plainly cause Peloton undue prejudice. Messrs. Gotts, Zubick, Kowalski, and Akalski have been involved in this case since early 2021, argued at the *Markman* hearing, worked on expert reports, and will be deeply involved in trial.

Given these concerns, coupled with the timing and futility of iFIT's proposed counterclaim, it would be reasonable to conclude that iFIT is acting with a dilatory motive, and its motion should be denied for that reason as well. *See SRI Int'l Inc. v. Internet Security Sys., Inc.*, 817 F. Supp. 2d 418, 423 (D. Del. 2011) (denying motion to add inequitable conduct for dilatory motive based on the late timing of the motion despite earlier knowledge).

## VI. CONCLUSION

Peloton respectfully requests that the Court deny iFIT's motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Michael J. Flynn

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Peloton Interactive, Inc.*

OF COUNSEL:

Steven N. Feldman
Clement Naples
Joseph C. Akalski
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-2927

Lawrence J. Gotts
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637- 2200

Marc N. Zubick
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876- 7700

David F. Kowalski
Patrick C. Justman
Adam Alexander Herrera
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

William J. Trach
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

May 2, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 2, 2022, upon the following in the manner indicated:

Frederick L. Cottrell, III — *VIA ELECTRONIC MAIL*
Christine D. Haynes
Tyler E. Cragg
Valerie A. Caras
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE 19801
*Attorneys for Defendant*

Kenneth L. Dorsney — *VIA ELECTRONIC MAIL*
Cortlan S. Hitch
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
*Attorneys for Defendant*

Robert Stewart — *VIA ELECTRONIC MAIL*
Maren Laurence
FOLEY & LARDNER LLP
136 South Main Street, Suite 400
Salt Lake City, UT 84101
*Attorneys for Defendant*

Pavan K. Agarwal — *VIA ELECTRONIC MAIL*
FOLEY & LARDNER LLP
Washington Harbour
300 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
*Attorneys for Defendant*

Ruben J. Rodrigues
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Joseph A. Loy
Ryan Kane
Nathaniel DeLucia
Matthew B. Hershkowitz
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Gregg F. LoCascio
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Robin A. McCue
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Sydney K. Hecimovich
FOLEY & LARDNER LLP
299 Main Street, Suite 2000
Salt Lake City, Utah 84111
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)